**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

WILLIER, INC.,

                Plaintiff,

v.                                    CIVIL ACTION NO.  5:06-cv-00547

WILLIAM BENNETT HURT, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant First National Bank's (FNB) Motion for Summary Judgment [Docket 116], filed on August 29, 2007.[1]  Also pending are Defendants David Rapp and Harvest Equipment Company's Motion for Summary Judgment [Docket 114] and Motion to Exceed Page Limit [Docket 113], also filed on August 29, 2007.  Since those motions were filed, David Rapp and Harvest Equipment Company have settled their claims with Plaintiff and have been dismissed from the case.  (Docket 169.)  Therefore, those motions filed by David Rapp and Harvest Equipment Company are **DENIED AS MOOT**.  For the reasons set forth below, Defendant FNB's motion for summary judgment is **GRANTED**.

---

[1] FNB also filed a Motion to Exceed Page Limit [Docket 112].  For good cause shown, that motion is **GRANTED**.  The parties further filed a joint Motion to Extend the Deadline for Willier to Respond [Docket 120].  For good cause shown, that motion is also **GRANTED**.

## I. BACKGROUND

### A.    Facts

The material facts are undisputed.  Plaintiff Willier, Inc. is a small, family-owned cattle trading company formed in the 1980's by Gary Willier.  Sometime in the 1990's, Mr. Willier stepped down, and the company is currently owned and operated by his daughter, Julie Willier.  In 1992, Ms. Willier, a graduate of Virginia Tech, met and began dating William Bennett Hurt, who is also a defendant in this lawsuit.[2]  Mr. Hurt had several years of experience working in the cattle industry, but had previously filed bankruptcy and was imprisoned for six months on a charge of selling "adulterated beef" (beef containing an illegal level of antibiotics).  Mr. Hurt was also fined for issuing bad checks and failing to pay for cattle purchases in the late 1980's and had his trading and bonding privileges suspended as a result.  (Docket 117 at 2.)  Despite their awareness of these legal problems, the Willers decided to hire Mr. Hurt to manage their cull cattle division.

As head of the cull cattle division, Mr. Hurt would negotiate for the purchase of cattle from vendors in Virginia and West Virginia.  On his trips to these vendors, Willier would entrust Mr. Hurt with signed checks to pay for the cattle.  Willier would typically leave blank either the payee or the amount, or both, and Mr. Hurt was then responsible for filling in the blanks when a purchase was made.

In July 2004, Gary Willier, who was employed to supervise Mr. Hurt, traveled to Greenbrier County, West Virginia, to discuss a potential cattle purchase with David Rapp.  During this meeting,

---

[2]  Mr. Hurt is currently in bankruptcy in the Northern District of Mississippi.  (Docket 32.)  The automatic stay resulting from his bankruptcy proceedings was conditionally lifted to allow Mr. Hurt to participate in discovery matters in this case.  (Docket 48-2 at 1.)  The stay remains in effect, however, as to all other aspects.  (*Id.*)

Mr. Rapp informed Mr. Willier that he had not been paid for a number of Willier's previous transactions.  Mr. Rapp also showed Mr. Willier two Willier corporate checks, made payable to E.E. Terry and Fields Brothers, respectively, that had been deposited in Mr. Rapp's personal account at FNB.  Upon learning of those checks, the Williers terminated Mr. Hurt and ceased their business operations to investigate Mr. Hurt's wrongdoing.[3]

During their investigation, the Williers uncovered a total of seventeen checks which they allege were improperly collected for deposit by FNB because the checks contained forged endorsements or no endorsement from the named payee.  For the purposes of this memorandum opinion, the checks can be divided into three groups.

The first group consists of three checks that Willier alleges contain forged endorsements:

1.    Check # 11619, payable to Mike Altice in the amount of $9,594.40 and deposited into FNB account 603554 in the name of Harvest Equipment Company[4] on February 28, 2003;

2.    Check # 11627, payable to Gary Deeds in the amount of $7,675.00 and deposited into FNB account 603554 in the name of Harvest Equipment Company on February 28, 2003; and

---

[3]  In November 2005, Mr. Hurt pled guilty in the Circuit Court of Greenbrier County to two misdemeanor charges of forgery and uttering.  Part of his sentence included restitution payments to Willier of $100 per month.

[4]  Although there is no express statement anywhere in the briefings, it is reasonably apparent that Mr. Rapp is at least an employee of Harvest Equipment Company.

3.      Check # 12085, payable to Mark Richardson in the amount of $3,258.00 and deposited into FNB account 312649 in the name of Billy and Mary Ann Level[5] on June 23, 2003.

The second group consists of three checks that Willier alleges contain no endorsements:

1.      Check # 13178, payable to Rich Valley Dairy in the amount of $5,050.00 and deposited into FNB account 603562 in the name of Harvest Equipment Company on May 4, 2004;

2.      Check # 13274, payable to E.E. Terry in the amount of $5,000.00 and deposited into FNB account 401609 in the name of J. David Rapp/Rapp's Dairy on June 24, 2004; and

3.      Check # 13341, payable to Fields Brothers in the amount of $5,000.00 and deposited into FNB account 401609 in the name of J. David Rapp/Rapp's Dairy on June 24, 2004.

The third and final group consists of eleven checks, # 12209, 12226, 12242, 12254, 12324, 12350, 12395, 12443, 12486, 12505, and 12547, all payable to Hillcrest Farms in an amount totaling $64,077.40.  Check # 12547 was deposited into FNB account 171328 in the name of Hillcrest Farms on November 10, 2003.  The other ten checks were all deposited into FNB account 312649 in the name of Billy and Mary Ann Level between August 1 and November 11, 2003.  It is undisputed that Hillcrest Farms is a d/b/a of Billy and Mary Ann Level.

---

[5]  Billy and Mary Ann Level conducted business with Willier, but are not named as defendants in this lawsuit.

4

B.      *Procedural History*

Plaintiffs filed the instant lawsuit on July 10, 2006, naming as defendants William Bennett Hurt, David Rapp, Harvest Equipment Company, and FNB.[6] (Docket 1 at 1.) The complaint alleges fraud, conversion, breach of contract, breach of fiduciary duty against Hurt, Rapp, and Harvest Equipment, and negligence against FNB. (*Id.* at 3-7.) FNB filed its Answer and Crossclaim [Docket 8] against Mr. Hurt, Mr. Rapp, and Harvest Equipment on August 21, 2006, and Willier filed a motion to amend its complaint [Docket 40] on March 2, 2007 to add a cause of action for conversion against FNB. The Court denied that motion in a Memorandum Opinion & Order [Docket 77] entered May 21, 2007, because Willier, as the drawer of the checks at issue, is precluded from bringing a claim for conversion under the UCC. (Docket 77 at 2.)

David Rapp and Harvest Equipment filed a motion to dismiss the complaint [Docket 6], which this Court denied in a Memorandum Opinion dated March 27, 2007 [Docket 50]. Mr. Rapp and Harvest Equipment subsequently settled their claims against both Willier and FNB, and were dismissed from the case on November 11, 2007. (Docket 169.) FNB filed the instant summary judgment motion on August 29, 2007. After a brief stay to allow additional discovery, the Court conducted a hearing on that motion at the pretrial conference. Discovery has now closed and the case is now ripe for consideration of summary judgment.

---

[6] Jurisdiction in this Court is proper under 28 U.S.C. § 1332(a) because Plaintiff is a Pennsylvania corporation and defendants Hurt, Rapp, Harvest Equipment and FNB are, respectively, a Mississippi resident, West Virginia resident, and West Virginia corporations, and Plaintiffs' claims exceed the jurisdictional amount of $75,000.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When construing such factual issues, it is well established that the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production."  *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).  Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. at 323.  Even undisputed facts may give rise to multiple inferences, however, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.*,  369 U.S. 654, 655 (1962).

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 256.  "The mere existence of a scintilla of

evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III.  ANALYSIS

A.    *Applicable Law*

Federal courts sitting in diversity are to apply the substantive law of the state in which they sit. *Erie R.R. v. Thompkins*, 304 U.S. 64 (1938).  While it is undisputed that West Virginia law will be applied to this case, the parties dispute the applicability of West Virginia's version of the Uniform Commercial Code (U.C.C.), W. Va. Code § 46-1-101 *et seq.*, and its interplay with the common law.[7]  Defendant argues that, because Plaintiff's claims fall under the U.C.C., any common law claim arising from Defendant's conduct is barred.  Plaintiff, in its brief, argues that the common law and U.C.C. operate jointly, allowing it to bring a common law negligence action in addition to any U.C.C. claim.

The analysis must begin with the statutory text.  In Article 1, the U.C.C. sets out that its provisions must be "liberally construed and applied to promote its underlying purposes and policies."  W. Va. Code § 46-1-103(a).  One of the purposes and policies is "[t]o make uniform the law among the various jurisdictions."  *Id.*  Additionally, "[u]nless displaced by the particular provisions of this chapter, the principles of law and equity . . . supplement its provisions." § 46-1-103(b).  This language would seem to indicate that the U.C.C. and common law coexist only to the

---

[7] Because the U.C.C. has been uniformly adopted by most jurisdictions, the Court will sometimes refer to U.C.C. sections by their shortened form, omitting the chapter numbers from the West Virginia Code.  These references to the U.C.C. are intended to refer to the corresponding section of the West Virginia Code.  For example, U.C.C. § 1-101 refers to W. Va. Code § 46-1-101.

extent that they do not overlap, however, neither party has cited to a West Virginia case that is dispositive on this point.

When Articles 3 and 4 of the U.C.C. were revised in 1990,[8] "one goal of the revisions . . . was to cut down on causes of action not explicitly established by the exact language of the Code." A. Brooke Overby, *Check Fraud in the Courts After the Revisions to U.C.C. Articles 3 and 4*, 57 Ala. L. Rev. 351, 389 (2005). While "courts are far from unanimous on the matter of the viability of non-Code claims, . . . the weight of case law appears to be coming down against the actions." *Id.* at 392 (citing a number of jurisdictions that reject common law claims in favor of the U.C.C.).

In this case, Article 3 of the U.C.C. applies because the case involves checks, which classify as drafts, and are thus negotiable instruments under Article 3. §§ 46-3-103 and -104. Willier was the drawer of the checks at issue and its bank, Ephrata National Bank, was the drawee bank. § 46-3-103. FNB, which took the checks for payment, is considered the depository bank, or collecting bank. *Id.*; § 46-4-105.

This case presents three separate factual scenarios, depending on the classification of the checks at the time they were deposited, as discussed above. Because each group of checks involves a distinct factual scenario, each group implicates different provisions of the U.C.C. and the common law. Thus, it is helpful to examine each group separately and address the interplay of the U.C.C. and common law as they apply to each group.

---

[8]  West Virginia adopted the revisions in 1993. *See Public Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 334, 480 S.E.2d 538, 543 (1996) (recognizing adoption).

B.      *The First Group of Checks - Forged Endorsements*

The scenario posed by the first group of checks is addressed directly by U.C.C. § 3-405, which deals with an employer's responsibility for a fraudulent endorsement by an employee. Specifically, that section states:

> For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

W. Va. Code § 46-3-405(b).  Here, it is undisputed that Hurt was Plaintiff's employee, and that the endorsements on the first group of checks were fraudulent. § 46-3-405(a)(1)-(2).  Further, Hurt had responsibility for the checks because Plaintiff entrusted him with checks that were either blank as to the payee and amount, or that included the payee but blank as to amount.  (Docket 117 at 3.)  Official Comment 1 to this section indicates that it "is based on the belief that the employer is in a far better position to avoid the loss . . . [however,] [i]f the bank failed to exercise ordinary care, subsection (b) allows the employer to shift [part of the] loss to the bank . . . ." § 46-3-405 cmt. 1.  Plaintiff's claim is precisely the kind of loss-shifting contemplated by the statute and, therefore, should be analyzed under this section.  To illustrate, in a case factually similar to the one at bar, a Virginia court allowed a drawer of checks with forged signatures who asserted a negligence claim instead to maintain an action under U.C.C. §§ 3-404 and -405.  *Gina Chin & Assocs., Inc. v. First*

*Union Bank*, 500 S.E.2d 516, 517 (Va. 1998). Because there is a U.C.C. provision directly on point, the U.C.C claim displaces any common law claim that Plaintiff might have on this group of checks.

FNB asserts that, because Plaintiff's claim regarding the first three checks falls under the U.C.C., it should be barred by the three-year statute of limitations in W. Va. Code § 46-3-118(g). Under that provision, a cause of action "to enforce an obligation, duty or right arising under [Article 3] . . . must be commenced within three years after the cause of action accrues." *Id.* In check fraud cases, the West Virginia Supreme Court of Appeals has held that the cause of action accrues separately for each check when the check is negotiated. Syl. pt. 4, *Copier Word Processing Supply, Inc. v. WesBanco Bank*, 220 W. Va. 39, 640 S.E.2d 102 (2006). The three checks in this group were negotiated (deposited) on February 28, 2003, February 28, 2003, and June 23, 2003, respectively. (Docket 117 at 5.) Because Plaintiff did not file its claim until July 10, 2006, (Docket 1), any claim on checks negotiated before July 10, 2003 (including Plaintiff's claim regarding the first group of checks at issue here) is barred by the statute of limitations.

Plaintiff in its brief argues that the discovery rule should apply to toll the statute of limitations. In support of this contention, Plaintiff cites to a number of West Virginia cases, however, none of them are based on U.C.C. § 3-118(g). In a footnote located in another section of its brief, Plaintiff innocuously cites to another case from this district where Chief Judge Goodwin applied the discovery rule in the context of a U.C.C. claim. *C & L Constr. Co. v. BB & T Corp.*, No. 2:04-cv-00488, 2005 WL 2792401 (S.D. W. Va. Oct. 26, 2005) (Goodwin, C.J.). In *C & L*, Chief Judge Goodwin recognized "that a majority of jurisdictions have refused to apply 'the discovery rule' to U.C.C. conversion cases[.]" *Id.* at *4. Turning his attention to West Virginia law, he then examined the West Virginia Supreme Court's decision in *Public Citizen v. First Nat'l Bank in*

*Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).  Upon examination, the Chief Judge found that, although the court did not expressly apply the discovery rule, it "looked at 'the learning of the deposit' as the applicable time when the statute of limitations should begin to run."  *C & L*, 2005 WL 2792401, at *4.  Based on that analysis, he determined that the West Virginia Supreme Court would apply the discovery rule to cases arising under the U.C.C.

Since Chief Judge Goodwin's opinion in *C & L*, the West Virginia Supreme Court decided *Copier Word*, 640 S.E.2d 102.  In *Copier Word*, the court held that "[t]he equitable tolling theory of continuing torts does not apply to the conversion of multiple, separate negotiable instruments." *Id.* at syl. pt. 3.  Although the court's ruling was addressed to the continuing tort theory, it based its ruling on similar cases that had rejected the application of discovery rule in U.C.C. cases.  *Id.* at 111-12 (citing, among others, *Menichini v. Grant*, 995 F.2d 1224, 1230-31 (3d Cir. 1993)).  The rationale behind those cases was based on upholding the U.C.C.'s policy of favoring speedy and definitive resolutions to cases arising under its provisions.  *Copier Word*, 640 S.E.2d at 111-12.  Because that policy "militate[s] strongly against open-ended liability on negotiable instruments," *id.* at 111, the court "conclude[d] that applying a continuing tort theory to the conversion of negotiable instruments is contrary to the purposes and policy behind the UCC."  *Id.* at 112.

When he decided *C & L*, Chief Judge Goodwin did not have the guidance provided by the West Virginia Supreme Court in *Copier Word*.  Although the policy statements provided therein may be dicta, they nevertheless indicate how the West Virginia court might decide the discovery rule issue.  Therefore, in light of *Copier Word*, the Court finds that the West Virginia Supreme Court would likely reject the application of the discovery rule in U.C.C. cases.  Without the benefit of the

discovery rule, Plaintiff's claim regarding the first group of checks is barred by the statute of limitations.

       C.       *The Second Group of Checks - Missing Endorsements*

      FNB contends that any claim for negligence relating to the second group of checks bearing no endorsements is subsumed by the U.C.C. The Court agrees. Although the claim does not fall under §§ 3-404 or -405,[9] most courts, including West Virginia, have found that payment over a missing endorsement gives rise to a claim for conversion under § 3-420. *See Public Citizen,* 198 W. Va. at 339, 480 S.E.2d at 548 (treating a case involving missing endorsements as a claim for conversion under § 3-419 of the U.C.C. before it was revised in 1993); *accord Pamar E Enters. v. Huntington Banks of Mich.*, 580 N.W.2d 11, 15 (Mich. Ct. App. 1998) (same).

      It is well-recognized, however, that an action for conversion may not be brought by the drawer of a check.[10] This bar is expressly recognized in the U.C.C. § 3-420(a) ("An action for conversion of an instrument may not be brought by . . . the issuer or acceptor of the instrument . . . ."). An issuer "means a maker or drawer of an instrument," in this case, Willier. § 3-105(c). *See*

---

[9] The checks do not meet the requirements of § 3-404 because there was neither an endorsement "made in a name substantially similar to that of the payee" nor were the checks "deposited in a depository bank to an account in a name substantially similar to that of the payee." § 3-404(c). Likewise, the checks do not meet the requirements of § 3-405 because there was no "forged indorsement purporting to be that of the person identified as payee." *Id.*; *accord Cont'l Cas. Co. v. Fifth/Third Bank*, 418 F. Supp. 2d 964, 975-76 (N.D. Ohio 2006) ("A missing or illegible endorsement is neither in the name of the payee nor substantially similar to the name of the payee, and therefore not forged."). Further, most courts have held that § 3-406, which addresses negligence contributing to a forged signature, does not support an independent cause of action. *See, e.g.*, *Wachovia Bank, N. Am. v. Fed. Reserve Bank of Richmond*, 338 F.3d 318, 325 (4th Cir. 2003); *Halifax Corp. v. Wachovia Bank*, 604 S.E.2d 403, 409 (Va. 2004).

[10] The Court hereby incorporates by reference the reasoning laid out in its Memorandum Opinion & Order [Docket 77] denying Plaintiff's motion to amend the complaint by adding a cause of action for conversion.

*also Pamar*, 580 N.W.2d at 16 ("[T]he drawer of the check may not maintain an action for conversion . . . ."). The policy behind disallowing a claim for conversion by the drawer of a check, according to the official comment, is that "[t]he check represents an obligation of the drawer rather than the property of the drawer."[11]  § 3-420 cmt. 1.  "The drawer has an adequate remedy against the payor bank for recredit of the drawer's account for unauthorized payment of the check."  *Id*.

Plaintiff asserts that, even if it cannot bring an action for conversion on the checks with missing endorsements, it is nevertheless permitted to bring an action for negligence.  In support of its assertion, Plaintiff calls the Court's attention to *Commercial Credit Corp. v. Citizens Nat'l Bank of Point Pleasant*, 150 W. Va. 196, 144 S.E.2d 784 (1964).  Although the court in *Commercial Credit* allowed a drawer to sue a depository bank for money had and received (not negligence), the case was decided before West Virginia's adoption of the U.C.C., and its holding has since been abrogated by the code's carefully crafted loss allocation scheme.  Despite this abrogation, Plaintiff further contends that "the West Virginia Supreme Court has continued to recognize the right of a drawer to sue a depository bank," (Docket 124 at 12 n.4), citing *Public Citizen*, 198 W. Va. 329, 480 S.E.2d 538, as support.  Plaintiff's reading of *Public Citizen* is erroneous; the case was brought by the *payee* of checks that were deposited with missing endorsements.  *Id.*  Thus, Plaintiff has cited no authority allowing such a right of action in West Virginia under the U.C.C.

Plaintiff nevertheless points to *Hartford Fire Ins. Co. v. Md. Nat'l Bank, N. Am.*, 671 A.2d 22 (Md. 1996), in support of its position that a drawer can maintain an action against a depository bank.  In *Hartford Fire*, the Maryland court held that "Maryland common law appears to allow a

---

[11]  If, in this case, FNB had attempted to negotiate the checks (through the proper banking channels) to Plaintiff's bank, Ephrata, and Ephrata had refused the checks due to the missing endorsements, Plaintiff's account would not have been debited and Plaintiff would have suffered no loss.

drawer to bring suit against a depositary bank for conversion in cases where the named payee has no interest in the check." 671 A.2d at 31.  Because the plaintiff there had an action for conversion, the court refused to decide whether the plaintiff had an action for negligence.  *Id.*

Shortly after *Hartford Fire* was decided, the holding was abrogated by Maryland's adoption of the revised U.C.C., which expressly states that a drawer has no cause of action for conversion against a depository bank.  *Abrogation recognized by Farmers Bank of Md. v. Chicago Title Ins. Co.*, 877 A.2d 1145, 1158 (Md. 2005).  In *Farmers Bank*, the Maryland court held that a drawer of a check could not bring an action for conversion, but did have a cause of action for negligence against a depository bank *only when the drawer does not otherwise have an adequate remedy.  Id.* at 1159-60.  That is not the case here.  Plaintiff has an adequate avenue to pursue a remedy under U.C.C. § 4-401 for wrongful payment because the checks were not properly payable.[12]

The court in *Farmers Bank* also examined a Seventh Circuit opinion, *Travelers Cas. & Sur. Co. of N. Am. v. Wells Fargo Bank, N. Am.*, 374 F.3d 521 (7th Cir. 2004), that purportedly imposed a duty to non-customer drawers on depository banks.  A closer examination of that case, however, reveals that the holding is limited to the factual scenario where the bank is the named payee.  *See Conder v. Union Planters Bank, N. Am.*, 384 F.3d 397, 399 (7th Cir. 2004) (distinguishing and limiting *Travelers* to its facts).  In *Conder*, the Seventh Circuit reasoned that Indiana would be unlikely "to impose on banks a general duty of care toward persons who are not their customers and

---

[12] "An item containing a forged drawer's signature or forged indorsement is not properly payable." § 4-401 cmt. 1.  Thus, an item containing no endorsement similarly would not be properly payable, and Plaintiff would have a cause of action against Ephrata under this section.  Likewise, the payees of the checks would be entitled to bring an action for conversion against FNB.

to whom therefore they have no contractual obligations[,]" especially in light of the great number of courts refusing to impose such a duty.  *Id.* at 399.

It should also be noted that the Fourth Circuit has held, under the previous version of the U.C.C., that "[a]lthough styled a 'conversion,' an action under § 36-3-419 [now 3-420] effectively subsumes both conversion and negligence claims based on payment over a forged or unauthorized indorsement in that § 36-3-419(3) [now 3-420(c)] encompasses the element of due care that is a key issue under a negligence theory." *Equitable Life Assurance Soc. of U.S. v. Okey*, 812 F.2d 906, 908 (4th Cir. 1987).  Although that suit was brought by the payee, the Fourth Circuit based its holding in part on the reasoning[13] that "when the Code and common law both provide a means of recovery, the Code should displace the common law, because variations in the common law among states destroy the uniformity in commercial transactions sought to be accomplished by the Uniform Commercial Code." *Id.* at 909.

Finally, even if common law negligence did apply here (which the Court finds that it does not), Plaintiff would still fail as a matter of law to make out a prima facie case of negligence.  The elements of a negligence claim are well established:  1) Defendant must owe Plaintiff a legal duty; 2) the duty must have been breached; 3) Plaintiffs must have been injured; and 4) the injury must

---

[13]   The court also based its reasoning on the fact that "both negligence and conversion require a consideration whether there was payment over an unauthorized indorsement and evaluation of the reasonableness of the defendant's actions." *Equitable*, 812 F.2d at 909.  While the revised version of the code removes the reasonableness of a defendant bank's actions from the equation, an action in conversion requires nothing more than proof that a bank made a payment "with respect to the instrument for a person not entitled to enforce the instrument or receive payment." § 3-420(a). Thus, an action for conversion still requires similar proof, and provides a similar remedy, to an action for negligence.  Though the cases are not uniform on this issue, the majority of courts have held that common law negligence actions have been displaced by the revised U.C.C.  For a more thorough discussion, see Overby, *supra*, at 389.

have been proximately caused by Defendant's negligence.  *Rowe v. Sisters of Pallottine Missionary Soc'y*, 211 W. Va. 16, 23, 560 S.E.2d 491, 498 (2001).  "In order to establish a prima facie case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff.  No action for negligence will lie without a duty broken."  Syl. pt. 1, *Parsley v. Gen. Motors Acceptance Corp.*, 167 W. Va. 866, 280 S.E.2d 703 (1981).  Most courts that have examined the issue have found that depository banks owe no duty of care to noncustomers.  *See, e.g.*, *Eisenberg v. Wachovia Bank, N. Am.*, 301 F.3d 220, 227 (4th Cir. 2002) (applying North Carolina law); *Conder v. Union Planters Bank, N. Am.*, 384 F.3d 397, 399 (7th Cir. 2004) (holding "in the face of the many cases that refuse in other settings to impose on banks a general duty of care toward persons who are not their customers" that no such duty is owed); *Smith v. AmSouth Bank, Inc.*, 892 So. 2d 905, 909 n.2 (Ala. 2004) ("Every court that has examined the issue has answered that banks owe no duty of care to noncustomers.").

Plaintiff points to two cases in support of its position that FNB owes a duty to Willier, which is not a customer: *C & L Constr. Co. v. BB & T Corp.*, No. 2:04-cv-00488, 2005 WL 2792401 (S.D. W. Va. Oct. 26, 2005) (Goodwin, C.J.), and *Commercial Credit Corp. v. Citizens Nat'l Bank of Point Pleasant*, 150 W. Va. 196, 144 S.E.2d 784 (1964).  The Court finds both of these cases inapplicable to the instant facts.  Chief Judge Goodwin did not address the viability of the plaintiff's negligence claim in *C & L*, and therefore, it does not support Plaintiff's position.  *Commercial Credit*, on the other hand, was not only decided before West Virginia's adoption of the U.C.C., it dealt with a claim for conversion, not negligence.

In short, the majority of courts have held, and this Court concurs, that a drawer of a check cannot bring a claim for conversion or negligence against a depository bank where it is not a

16

customer.  In cases such as this, a drawer's proper remedy is against its own bank (the payor bank) for wrongful payment of the check and recredit of its account.  Even if it could bring a claim for negligence, Plaintiff has cited no cases to establish any duty of care owed by a depository bank to noncustomers.  Based on this reasoning, the Court finds that Plaintiff's claim on the second group of checks fails as a matter of law.

> D.    *The Third Group of Checks - Payable to Hillcrest Farms*

In support of its motion, FNB asserts that Plaintiff's recovery on the third set of checks is barred by the intended payee defense.  In its brief, FNB thoroughly lays out the defense and the policy behind it.  Plaintiff, however, fails to respond to this argument in its brief and argues only that Hillcrest Farms was a "fictitious payee" and that FNB was negligent when it allowed the Levels to deposit checks made out to Hillcrest Farms in their personal account.[14]  Regardless of whether Plaintiff's claim arises under the U.C.C. or common law, the Court agrees that the claim is barred by the intended payee defense.

In a case factually similar to this one, the Seventh Circuit applied the intended payee defense to bar recovery.  *See Conder v. Union Planters Bank*, 384 F.3d 397 (7th Cir. 2004).  The Seventh Circuit described the rule as follows:

> [I]f a bank transfers a check without a proper endorsement but the transfer is to a person whom the drawer of the check wanted (or would if consulted have wanted) to have the money, the bank is not liable for any loss the drawer may have suffered as a result of the transfer, since the transfer would have gone through even if the bank had insisted that the check be properly endorsed.

---

[14]  At least one check made out to Hillcrest Farms was deposited into an account bearing the name Hillcrest Farms.  Even without the benefit of the intended payee defense, Plaintiffs have suffered no injury regarding this check and accordingly have no cause of action.

17

*Id.* at 401.  In *Conder*,  the plaintiff drawer made out a check to Mr. Smith, who endorsed it in his

own name and deposited it into the escrow account of his d/b/a, Lincoln Fidelity.  *Id.* at 398.

Although in that case the deposit was into an escrow account, the Seventh Circuit's reasoning is

applicable here.  First, as in *Conder*, there are no "suspicious circumstances" from FNB's

perspective here; Hillcrest Farms was the Levels' d/b/a, and it is a common practice for farmers to

have an unregistered d/b/a while conducting business out of their personal account.  *See id.* at 400.

Moreover, as the court reasoned in *Conder*, FNB could have returned the check to the Levels, who

could have endorsed it in the name Hillcrest Farms, and then deposited it into their personal account,

leaving the same result as what was actually achieved.  *Id.* at 401.  Thus, to the extent that Plaintiff

was injured, FNB was not a proximate cause.

       The Seventh Circuit is not the only court to recognize such a defense.  South Carolina has

explained the rule in some detail:

> Where the proceeds of a forged check reach the intended payee, there
> can as a general rule be no cause of action by anyone on the forged
> endorsement. The payee cannot sue . . . since he has suffered no
> damage-he has, after all, received the monies intended for him. The
> drawer may not sue the drawee-payor bank for an improper charge on
> his account because, again, no damage has been suffered as the funds
> have been put to their proper use. . . . Being immune from suit once
> the payee has received his funds, the payor bank has suffered no
> damage from the forgery and hence cannot reap undeserved benefits
> from the collecting bank.

*Bankers Trust of S.C. v. S.C. Nat'l Bank of Charleston*, 325 S.E.2d 81, 85 (S.C. Ct. App. 1985)

(citations omitted).  In this case, the checks were made out to Hillcrest Farms and the owners of

Hillcrest Farms, the Levels, actually received the money.  Plaintiff has suffered no damage because

the money reached the intended payee – the Levels, d/b/a Hillcrest Farms – and Plaintiff would have

18

been out the same amount of money regardless of whether the account was in the name of Hillcrest Farms or William and Mary Ann Level.  Thus, the intended payee defense applies.

The rationale behind the rule, as articulated by a Michigan court, is twofold: "First, it is aimed at preventing a drawer from being unjustly enriched by recovering for an improperly paid check where the proceeds of the check in fact were received by the payee. It is also justified where a bank's improper payment is not a cause of the drawer's injury flowing from the transaction." *Comerica Bank v. Mich. Nat'l Bank*, 536 N.W.2d 298, 300 (Mich. Ct. App. 1995) ("[A] bank may escape liability for honoring a check on a faulty or improper endorsement, or even with no endorsement, if the bank can prove that the intended payee received the proceeds of the check.") (citations omitted); *see also Nat'l Union Fire Ins. Co. v. Allfirst Bank*, 282 F. Supp. 2d 339, 351 (D. Md. 2003) (applying the intended payee rule in a case for breach of restrictive endorsement rather than negligence or conversion, "[w]here the intended payee actually receives the proceeds of the check at issue, there is no liability for breach of a restrictive indorsement, even it there is an improper indorsement, or no indorsement").  Both of these considerations come into play here.  FNB proved that the intended payee received the proceeds from the third group of checks.  If Plaintiff did intend to pay Hillcrest Farms (the Levels), the money reached the intended payee and any recovery would amount to an unjust enrichment for Plaintiff.  If Plaintiff did not intend to pay Hillcrest Farms (the Levels), the cause of the injury was Hurt, not FNB, because Hillcrest Farms was the named payee and FNB had no way of knowing Plaintiff's true intent; all it had to go by was the name on the check.  By either theory, Plaintiff has no recovery against FNB on the third group of checks.

*IV. CONCLUSION*

For the reasons stated herein, FNB's Motion for Summary Judgment [Docket 116], Motion to Exceed Page Limit [Docket 112], and Motion to Extend the Deadline for Willier to Respond [Docket 120] are **GRANTED**.  Defendants David Rapp and Harvest Equipment Company's Motion for Summary Judgment [Docket 114] and Motion to Exceed Page Limit [Docket 113] are **DENIED AS MOOT**.  A Judgment Order will be entered this day  implementing the rulings contained herein.

ENTER:        December 31, 2007

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE